**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **THOMAS W. HYSER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:11-CV-00102** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Thomas Hyser appeals to the district court from a final decision of the Commissioner of Social Security denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits.[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Hyser applied for DIB in January 2006, alleging that he became disabled as of December 12, 2005. (Tr. 246-48.) The Commissioner denied his application initially and upon reconsideration, and Hyser requested an administrative hearing. (Tr. 227-38.) Administrative Law Judge ("ALJ") John Pope conducted a hearing on September 9, 2008, at which Hyser, who was represented by counsel, and a vocational expert ("VE") testified.[2] (Tr. 734-70.)

On May 29, 2009, the ALJ rendered an unfavorable decision to Hyser, concluding that he

---

[1] All parties have consented to the Magistrate Judge. (Docket # 12.) *See* 28 U.S.C. § 636(c).

[2] The last page of the hearing transcript was omitted from the record. (*See* Tr. 770.) However, the portion of the transcript relevant to this Opinion, pages 767 to 769, is intact, and thus the omission is immaterial.

was not disabled because, despite the limitations caused by his impairments, he could perform his past work as a plater and a significant number of other jobs in the economy. (Tr. 194-206.) The Appeals Council denied Hyser's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-12.)

Hyser filed a complaint with this Court on March 25, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Hyser's sole argument on appeal is that the ALJ failed to incorporate his finding at step three that he had moderate difficulties in maintaining concentration, persistence, or pace into the residual functional capacity ("RFC") and the hypotheticals he posed to the VE, causing the ALJ's step five finding to lack the support of substantial evidence. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 15-17.)

## II. FACTUAL BACKGROUND

### *A. Hyser's Background*

At the time of the ALJ's decision, Hyser was forty-four years old; had a ninth grade education; and possessed work experience as a plater and janitor. (Tr. 246, 321, 739.) He alleges that he became disabled on December 12, 2005, due to degenerative disk disease, arthritis, HIV positive status, depression, and anxiety. (Opening Br. 2.)

At the hearing, Hyser testified that he lives with his life partner and his eight-year-old grandson. (Tr. 738.) His typical day includes caring for his grandson; preparing meals and performing other household tasks, including laundry and grocery shopping; watching television; and helping his grandson with his homework. (Tr. 747-50.) Hyser stated he that could not work due to low back, leg, and neck pain; numbness in his feet and intermittently in his hands; fatigue;

anxiety; and depression. (Tr. 741-42, 746-47, 754.) Several times a month he has panic attacks and feels so depressed that he stays in bed. (Tr. 751.) When he gets nervous, he has difficulty concentrating and recalling things. (Tr. 754.) Hyser takes medication for his conditions, which make them "tolerable," and does not experience any side effects from the medication; he was also seeing a mental health counselor at the time of the hearing. (Tr. 747, 752.)

*B. Summary of the Relevant Medical Evidence*

Because Hyser's argument on appeal concerns only the ALJ's consideration of his concentration difficulties, the Court will focus on the medical evidence pertaining to his mental impairments. In that regard, the record reflects that Hyser was under the care of Dr. James Hanus, a family practitioner, from at least March 2006 to January 2009.[3] (*See* Tr. 123-44.) Hyser primarily complained to Dr. Hanus of physical issues; however, Dr. Hanus did occasionally address Hyser's mental health issues, prescribing Effexor for his depression. (Tr. 128-30, 134, 140-43.)

On March 22, 2006, Hyser underwent a mental status exam by Robert Walsh, Psy.D., at the request of the state agency. (Tr. 496-99.) Hyser reported that his depression began when he was a teenager and that he had been taking anti-depressants since age 28. (Tr. 496.) He stated that he copes with his depressed feelings by staying in bed all day. (Tr. 496.) Hyser reported to Dr. Walsh periods of psychomotor agitation and retardation along with fatigue, low self-esteem, poor concentration, indecision, and recurrent thoughts of death, but no suicidal ideation. (Tr. 496.) On mental status exam, Hyser was animated, cooperative, and in a pleasant, but anxious, mood. (Tr. 497.) He exhibited logical thought processes, fair attention and concentration, and

[3] At the hearing, Hyser testified that he had been going to Dr. Hanus for the past nineteen years. (Tr. 745.)

good insight and judgment. (Tr. 497.) Dr. Walsh diagnosed Hyser with major depressive disorder, recurrent, moderate; anxiety disorder; cannabis abuse; and rule out learning disorder; he assigned him a Global Assessment of Functioning ("GAF") score of 52, indicating "moderate" symptoms.[4] (Tr. 498.)

On May 4, 2006, Dr. Joelle Larson, a state agency psychologist, reviewed Hyser's record and concluded that Hyser had mild restrictions in daily living activities and moderate limitations in social functioning and in maintaining concentration, persistence, or pace. (Tr. 508-24.) Dr. Larson further noted:

> Attention and concentration were fair during mse [sic]. He is not under the care of a psychiatrist and is not seeing a counselor. [A]ffect animated, but anxiety noted. [Claimant] cares for a grandson, which he helps dress and drives to school. He reports feelings as if strangers know about his HIV status and are afraid to touch him, but is still able to go out in public most of the time. He is able to cook simple things and sort clothes for laundry. He can perform [simple, repetitive tasks] on a sustained basis w[ith]out special consideration.

(Tr. 524.)

In November 2006, Hyser told Dr. Hanus that Effexor was not effectively controlling his depression, reporting that he felt depression "swings" and did not want to get out of bed. (Tr. 129.) In March 2007, Hyser complained to Dr. Hanus of stress, fatigue, and anxiety, again expressing that he did not feel that his anxiety and stress were well controlled. (Tr. 130.) In September 2007, Hyser told Dr. Hanus that he had begun to see a mental health counselor and was working through several personal issues. (Tr. 134.) In August 2008, Hyser complained of

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id*.

fatigue and stress to Dr. Hanus's nurse practitioner. (Tr. 140.)

In September 2008, Hyser asked Dr. Hanus to write a letter in support of his disability. (Tr. 141-42.) In the letter, Dr. Hanus indicated that Hyser had depression, which "seems pretty well controlled," and anxiety. (Tr. 141.) Dr. Hanus summarized: "We did have [Hyser] verify his ability to do work related activities and according to his reply he certainly sounds like he is disabled." (Tr. 141.) Nevertheless, Dr. Hanus further opined:

> But the honest-to-god issue here is do I think he is disabled? I do not think he is disabled. If I had to put my hand on a Bible and state that everything I see here shows that he is disabled, I would say "No." I do not think that he is disabled. I see people who work who have much, much more severe arthritis, spinal stenosis or foraminal stenosis of the back. I think if he would quit smoking his breathing would be fine, or at least tolerable. I do not know how much headache he has. The MRI was essentially normal. So, this is the report you get. I am not going to say he is disabled. I am going to say he has probably low back pain and he has cervical myofascial strain of his neck, but so do many people who work on a daily basis.

(Tr. 142.) Dr. Hanus also reported that although Hyser was HIV positive, he did not have AIDS and thus was not disabled on that basis. (Tr. 141.)

## III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5)

whether the claimant is incapable of performing work in the national economy.[5] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

*B. The ALJ's Decision*

On May 29, 2009, the ALJ rendered his decision. (Tr. 194-206.) He found at step one of the five-step analysis that Hyser had not engaged in substantial gainful activity since his alleged onset date. (Tr. 196.) At step two, the ALJ concluded that he had the following severe impairments: degenerative disk disease, arthritis, HIV positive status, depression, anxiety, and a history of alcohol and marijuana use. (Tr. 196.) At step three, the ALJ determined that Hyser's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 197.)

Before proceeding to step four, the ALJ determined that Hyser's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant can only perform simple, repetitive tasks involving only occasional contact with the public and co-workers.

(Tr. 199.) Based on this RFC and the VE's testimony, the ALJ found at step four that Hyser was capable of performing his past relevant work as a plater. (Tr. 204.) In addition, the ALJ

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC, that is, what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

proceeded to step five and concluded that Hyser could perform a significant number of other unskilled light jobs within the economy, including laundry folder, hand packager, and mail clerk. (Tr. 205.) Therefore, Hyser's claim for DIB was denied. (Tr. 205.)

*C. The ALJ's Step Five Finding Is Supported by Substantial Evidence*

In his sole argument on appeal, Hyser contends that the ALJ erred at step five when posing his hypothetical to the VE, maintaining that the ALJ failed to include his finding that Hyser had moderate deficiencies in concentration, persistence, or pace. Hyser's argument, however, is without merit.

To explain, at step two of the five-step sequential analysis, the ALJ must determine whether a claimant's impairment(s) are "severe." 20 C.F.R. § 404.1520. In determining the severity of a claimant's mental impairments at step two of his five-step analysis, the ALJ addresses the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when neither his RFC nor his hypothetical question to the VE "t[ook] into account" his finding at step two that the claimant had deficiencies in concentration, persistence, and pace); *see also O'Connor-Spinner v. Astrue*, 527 F.3d 614, 619 (7th Cir. 2010). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate *all* relevant limitations from which the claimant

suffers." *Kasarsky*, 335 F.3d at 543 (emphasis added).

At step two, the ALJ found that Hyser had moderate difficulties in maintaining concentration, persistence, or pace, as well as moderate difficulties in maintaining social functioning. After determining that Hyser's mental impairments were significant enough to be "severe" but not severe enough to meet a listing-level impairment, the ALJ assigned him a RFC limiting him to "simple, repetitive tasks involving only occasional contact with the public and co-workers." (Tr. 199.) Here, contrary to Hyser's argument, the ALJ adequately accounted for Hyser's deficiencies in concentration, persistence, and pace by assigning him a RFC that limited him to "simple, repetitive tasks," a limitation that was properly incorporated into the ALJ's hypothetical to the VE. (*See* Tr. 767-69.)

Significantly, in assigning the RFC the ALJ reasonably relied upon the opinion of Dr. Larsen, the state agency physician, who reviewed Hyser's record and concluded that although he had moderate difficulties in maintaining concentration, persistence, or pace (Tr. 518), he could still perform work involving "[simple, repetitive tasks] on a sustained basis w[ith]out special considerations" (Tr. 524). The instant circumstances, therefore, are analogous to the facts confronting the Seventh Circuit in *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).

In *Johansen*, the ALJ determined that the claimant was moderately limited in his ability to maintain a regular schedule and attendance and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *Id*. In posing a hypothetical to the VE, the ALJ relied upon the opinion of a consulting physician who stated that because the claimant was not significantly limited in seventeen of twenty work-related areas of mental functioning, he retained the mental RFC to perform "low-stress, repetitive work." *Id*.

The Court of Appeals concluded that the ALJ's limitation to low-stress, repetitive work adequately incorporated Johansen's moderate mental limitations, articulating that the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work." *Id.*; *see also Milliken v. Astrue*, 397 F. App'x 218, 221-22 (7th Cir. 2010) (unpublished) (affirming ALJ's step five finding where a medical expert opined that despite claimant's difficulties in concentration, persistence, or pace, she could still perform unskilled work); *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Like the consulting physician in *Johansen*, here Dr. Larsen essentially "translated [his] findings into a specific RFC assessment," 314 F.3d at 288, concluding that Hyser could still perform "[simple, repetitive tasks] on a sustained basis w[ith]out any special considerations" (Tr. 524). Moreover, in addition to limiting him to "simple, repetitive tasks," the ALJ also assigned Hyser a limitation that he work only in jobs "involving only occasional contact with the public and co-workers," thereby also taking into account his finding at step two that Hyser had moderate difficulties in maintaining social functioning.

In short, because Dr. Larsen translated Hyser's moderate deficits in concentration, persistence, or pace into a RFC of "simple, repetitive tasks," substantial evidence indicates that the hypothetical posed by the ALJ to the VE at step five adequately conveyed Hyser's mental

limitations. Therefore, Hyser's sole argument on appeal does not warrant a remand of the Commissioner's final decision.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Hyser.

SO ORDERED.

Enter for this 20th day of March, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge